UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY TAYLOR,<br><br>   Plaintiff,<br><br>  v.<br><br>SHAYE O'HANNESON, et al.,<br><br>   Defendants. | Case No.: 1:11-cv-00538-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF Nos. 53, 61, 71] |

  Plaintiff Tracy Taylor is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

  This action is proceeding on Plaintiff's first amended complaint against Defendants Shaye Ohhanneson, Rene Duran, and Howard Smith for excessive force in violation of the Eighth Amendment.

  On June 19, 2014, Plaintiff filed a motion for partial summary judgment. (ECF No. 53.)

  On October 2, 2014, Defendants filed a motion for summary judgment, and a separate opposition to Plaintiff's motion for partial summary judgment and response to Plaintiff's statement of undisputed facts. (ECF Nos. 61, 63, 64.)

1

On October 20, 2014, Plaintiff filed an opposition to Defendants' motion for summary judgment, and a separate response to Defendants' statement of undisputed facts. (ECF Nos. 65, 67.)

On October 28, 2014, Defendants filed a reply to Plaintiff's opposition and objections regarding their statement of undisputed facts. (ECF No. 69.)

On November 20, 2014, Plaintiff filed a response to Defendants' reply, i.e. a surreply. (ECF No. 70.) On November 18, 2014, Defendants filed a motion to strike Plaintiff's surreply as unauthorized. (ECF No. 71.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere

existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.

## DISCUSSION

### A.  Defendants' Motion to Strike Plaintiff's Surreply

Defendants move to strike Plaintiff's reply to their response to his opposition, i.e. the filing of a surreply.

The Local Rules of this Court and the Federal Rules of Civil Procedure do not generally permit the filing of surreply. See Local Rule 230(l) (matter is generally submitted after movant files and serves reply). Plaintiff provides no justification for filing a surreply to Defendants' reply, and the Court did not request for approve the surreply. Accordingly, Defendants' motion to strike Plaintiff's surreply should be granted, and it is recommended that it be stricken from the record without consideration by the Court.

### B.  Defendants' Motion to Strike Plaintiff's Statement of Undisputed Facts

Defendants move to strike Plaintiff's statement of undisputed facts for failure to comply with Local Rule 260(a).

Defendants have not provided sufficient grounds to strike Plaintiff's statement of undisputed facts for failure to comply with Local Rule 260(a). Local Rule 260(a) states each motion for summary judgment shall be accompanied by a "Statement of Undisputed Facts" that enumerate discretely each

of the specific material facts relied upon in support of the motion and cite the particular portions of any document relied upon to establish that fact. Local Rule 260(a). In his motion for partial summary judgment, opposition, and statement of undisputed facts, Plaintiff repeats many of the allegations in his complaint and maintains his own account of the facts in this case. (ECF Nos. 53, 65, 66, 67.) He includes numerous citations to the record and submits documents which he contends support his version of the facts. Id. Thus, the Court finds that Plaintiff has sufficiently complied with Local Rule 260(a) for purposes of review of his motion for partial summary judgment, and Defendants' motion to strike the statement of undisputed facts should be DENIED.[1]

### C.   Allegations of First Amended Complaint

Plaintiff is currently in custody in the California State Prison ("CSP") in Lancaster, California. However, the incidents described in Plaintiff's complaint took place while he was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California. Plaintiff names Shaye Ohanneson, Rene Duran, and Howard Smith as defendants (collectively referred to as "Defendants").

On August 28, 2009, Plaintiff exited his cell for yard release. He stopped to talk to Defendant Duran about fixing problems with his television. Defendant Duran stated, "I don't give a damn about you or your T.V. Taylor, now take it to the yard." Plaintiff informed Defendant Duran that Sergeant Hightower gave instructions for Defendant Duran to help Plaintiff with his television. At that point, Defendant Duran called to Defendant Ohanneson for assistance. Plaintiff explained the situation to Defendant Ohanneson, who became upset and verbally aggressive. Defendant Duran yelled for Plaintiff to get against the wall. Plaintiff complied with the order. Defendant Duran started kicking Plaintiff's feet apart and said, "You think you're smart don't you?"

Next, Defendant Duran placed handcuffs on Plaintiff's left wrist and started jerking and twisting the handcuffs. When Plaintiff moved, Defendant Duran leaned onto Plaintiff and stated, "I don't like your ass, I'll kick your ass and there is nothing you can do about it." Plaintiff laughed out loud and replied, "I don't think you will kick my ass on this tier with all of these witnesses looking out

---

[1] In any event, as explained below, some of the facts set forth by Plaintiff are undisputed by Defendants, and where disputed by Defendants, such statements are omitted for purposes of analysis of this motion.

of their cell's[sic]." Defendant Duran immediately took the handcuff off of Plaintiff's left wrist and said take it to the yard. Defendants Ohanneson and Duran followed Plaintiff.

Once Plaintiff was outside the building, Defendant Ohanneson yelled "Fucken as homo [sic],"[2] grabbed Plaintiff, and threw him against the building. Defendant Ohanneson placed his left forearm on Plaintiff's neck and then radioed for assistance with a "combative inmate." Defendant Ohanneson threw Plaintiff to the ground, jumped on top of him, and kneed him three times in the back. Defendant Ohanneson grabbed Plaintiff's right arm and started twisting and bending it while yelling, "I'm going to kill your ass." Plaintiff heard a loud pop coming from his shoulder and his arm went numb.

Defendant Duran stood and watched this happen until the prison alarm went off. At that point, Defendant Duran jumped on Plaintiff's back and placed her right hand and knee on the upper portion of Plaintiff's back. At the same time, Defendant Duran's left hand pushed Plaintiff's face back and forth on the asphalt. Defendant Duran placed her knee on Plaintiff's neck and tried to put her weight on it. A few minutes later, Defendant Smith[3] placed Plaintiff's left hand in handcuffs, threw him to the ground, and stomped on him three times. Defendant Smith hit Plaintiff three times in the back with a baton.

Defendant Ohanneson continued to twist and bend Plaintiff's arm. At some point, Defendant Ohanneson said, "Taylor in three more minutes you will be dead and gone." At that moment, other prison officials arrived at the scene. Defendant Ohanneson bent down and said, "Your[sic] lucky witnesses showed up or in three more minutes you would be dead." Defendant Ohanneson then informed the other prison officials that Plaintiff had spit in his face. Plaintiff was placed in a spit mask, strapped onto a gurney, and taken to the medical clinic. Nurse Tredwell wrote up Plaintiff's medical report.

Later that day, Plaintiff was placed in KVSP administrative segregation ("ad-seg") and deemed an immediate threat to the safety of self of others. On September 2, 2009, while still in ad-seg, Plaintiff received a rules violation report. Plaintiff alleges that the violations report contained false

---

[2] Plaintiff describes himself as a bisexual male.

[3] Plaintiff could not identify Defendant Smith until he received the incident report.

1   statements made by Defendants Ohanneson and Duran, in violation of California Penal Code section
2   118.1.

   **D.   Undisputed Facts[4]**

   1. At all times relevant to this action, Plaintiff Tracy Taylor was in the custody of the California Department of Corrections and Rehabilitation (CDCR) as a prisoner at Kern Valley State Prison (KVSP), in Delano, California.

   2. At all times relevant to this action, Defendants Ohanneson, Duran and Smith were employed by CDCR at KVSP as correctional officers.

   3. On the morning of August 28, 2009, officer Duran released Taylor from his cell to go to the yard, where Taylor intended to tell the correctional Sergeant about matter concerning repair of his television.[5]

   4. As Taylor walked away from his cell toward the yard, Ohanneson and Duran followed him.

   5. Taylor never saw Smith during the incident, and Taylor did not become aware of Smith's identity until later when Taylor read reports concerning the incident.

   6. Responding staff arrived and Taylor was restrained on a gurney and transported to the facility medical clinic. An LVN nurse there visually examined him while he was in restraints.

   7. Taylor was then transported to the facility program office, videotape interviewed, and examined again by a staff nurse.[6]

   8. After the two nurse's examination on the morning of the incident, Taylor did not request or receive any further medical care or treatment.

---

[4] These facts are compiled by the parties' submissions which are not in dispute.

[5] Plaintiff disputes the fact that officer Ohanneson, in addition to officer Duran released him from his cell to yard. Accordingly, the Court omitted Defendant Ohanneson from this statement of fact.

[6] Plaintiff attempts to dispute this fact by stating that after he was examined at the clinic he was pushed outside the clinic and left chained to a gurney for 30 minutes in the general population area. This factual statement does not dispute the factual content of this statement.

9. The extent of Taylor's injuries were that his right arm and shoulder hurt, with the pain subsiding after two hours and completely gone in three hours, and never returning; and he had bruises and scratches on his arm and face which healed normally.

10. Plaintiff was charged with aggravated battery on a peace officer.

11. The Rules Violation Report (RVR) states that O'hanneson ordered Taylor to put his hands behind his back, and Taylor did so; that O'hanneson with his left hand took Taylor's left forearm to handcuff him; and that Taylor turned to the left and spit at O'hanneson, resulting in some of the spit landing on O'hanneson's left forearm.[7]

12. Defendant O'hanneson claimed that while Petitioner was prone out face down on the asphalt, arm's extended out directly behind Petitioner in O'hanneson grip with O'hanneson body weight on Petitioner's face in that position Petitioner was resisting which caused the twisting, turning, moving back and forth of Petitioner's arms.

13. Plaintiff participated in a videotaped interview with Lieutenant Jeffrey's about three hours after the incident on August 28, 2009.[8] Plaintiff made a statement during the interview concerning Plaintiff taking a polygraph examination.

14. Plaintiff filed an inmate appeal grievance all the way to the third level of review regarding the assault Defendants' committed on Plaintiff.

15. Appeals examined of the Inmate Appeals Branch denied the appeal Log & KVSP-0-09-01728; IAB Case No: 0912324 Director's Level Appeal Decision.

16. Plaintiff still has one year of jail or prison time to do from being found guilty in Kern County Superior Court, case number DF009751A in which Defendant's O'hanneson and Duran gave sworn testimony in.[9]

---

[7] Defendants dispute the fact that the RVR states that Ohanneson was standing behind Taylor at the time Taylor spit. Thus, such statement is omitted.

[8] Defendants dispute that Plaintiff stated during the interview that he was assaulted by Defendant O'hanneson, Duran and Smith. Thus, this fact is omitted. Defendants further admit that Plaintiff made a statement during the interview concerning him taking a polygraph, but dispute that Plaintiff made such statement to prove that he was assaulted.

[9] Defendants submit that they are uncertain as to whether or not this fact is correct; however, because the fact is irrelevant to the instant motion it is admitted as undisputed.

7

**E.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment as to the liability by Defendant Ohanneson for damages caused by the use of force on Plaintiff. Plaintiff submits his declaration, signed under penalty of perjury, in support of his claim that summary judgment should be granted in his favor against Defendant O'hanneson. In relevant part, Plaintiff declares the following as to the use by Defendant O'hanneson:

> On August 8, 2009, while I was housed at Kern Valley State Prison (KVSP) D-facility I was exit[]ing building 8 and prison guard Shaye O'hanneson was right behind me. I took two steps out of the building and prison guard O'hanneson yelled fucken as[s] homo, and then grabbed me and threw me against the building[.] Defendant O'hanneson then placed his left forearm on my neck and with his other hand radioed in "I have a combative inmate and assistance is needed!" [H]e then grabbed me and threw me to the ground and jumped on top of me (at the time I weighed approximately 180 pounds. [D]efendant O'hanneson weighed approximately 250 pounds) and kneed me three times in my lower back, took hold of my arms and pulled them back and up, after a while defendant O'hanneson started twisting and bending my arm while yelling I'm going to kill your ass, at this time I heard a loud popping sound and my arm went numb.
> 	…
> [A]ll through this time defendant O'hanneson continued twisting and bending my arm in all directions in an attempt to break my arm, at some point Mr. O'hanneson leaned forward and said Taylor in three more minutes you will be dead and gone, at that moment other prison guards, sergeants and a lieutenant showed up and Mr. O'hanneson said Taylor your luck witnesses showed up or in three more minutes you would be dead.
>
> Once the officials got close Mr. O'hanneson started yelling out lou[]d Taylor stop resisting; Taylor stop resisting. Lieutenant Jeffrey[']s was standing at this time about one feet to my right, and the Sergeants and other prison guards had walked passed me on the ground and stood off about ten feet away looking at the situation.
>
> Mr. O'hanneson all this time continued trying to break my arm while yelling Taylor stop resisting, Taylor stop resisting. I then yelled lieutenant I'm not resisting this dude is trying to break my arm! Mr. O'hanneson said shut up, and Mr. Duran lifted my head and slammed it down on the ground, at that time, the lieutenant looked back down and said Taylor stop resisting or I'll spray you, and at that very moment Mr. O'hanneson put my hand in the handcuff and stood up and walked over to the other prison guards and started laughing, then pointed at me and said is he crying, I think he's crying.
>
> Lieutenant Jeffrey said what happened here, at that time Mr. O'hanneson jumped and said he spit on my forearm, and I yelled I didn't spit on anyone LT. and I was told to shut up.

…

In defendant O'hanneson['s] rule violation report he wrote that on August 28, 2009, he order[ed] me to put my hands behind my back. (I complied) and Mr. O'hanneson then took his left hand and grabbed my left forearm to place in handcuffs when I turned to the left and spit at defendant O'hanneson resulting in some of the spit landing on his left forearm. (Citation)

The way defendant O'hanneson described the incident in his rule violation report on how I spit on him is an impossible act. Mr. O'hanneson according to his rule violation report … was position directly behind me when I placed my hands behind my back and he grabbed my left forearm with his left hand! (physical position would have Mr. O'hanneson left forearm in the middle of my back); from that position I took a step to the left and spit resulting in some of the spit landing on his left forearm.

It is a physical impossibility; no human being if spitting from the position described by Mr. O'hanneson could circle around avoid my body and somehow make it to the lower part of my back and land on someone['s] forearm which is in my lower back.

 I believe that Mr. O'hanneson willfully and purposefully decided to assault me when we [were] inside of the housing unit talking because when I [exit] my cell to go to the yard I stopped to talk to defendant Duran who was standing in front of my cell while defendant O'hanneson was upstairs releasing inmates for yard, during the conversation Mr. O'hanneson stopped releasing yard and came down the stairs at which time I explain that Sergeant Hightower told me to instruct them to give me a pass  so that I can turn my TV in so it can get fixed both Mr. Duran and O'hanneson was both trying to provoke me into making a sudden move so that they could react.  Mr. Duran even told me that he would kick my ass, and when I said that I don't think they would do that with all the inmate witnesses around that are looking out of their cell, it was Mr. O'hanneson who told me to go to the yard and when I moved to leave I told Mr. Duran and O'hanneson that I will be going to the yard to let the Sergeant known that they refused to obey his instructions.

. . .

The defendant Shaye O'hanneson his statement in the rules violation report he himself wrote stated that he ordered me to put my hands behind my back at which time he grabbed my left forearm with his left hand at which time I took a step to the left and spit which some of it landed on his left forearm.  The description made by the defendant is an impossible act since the defendant's left forearm was in the middle of my back and the defendant maintained control of my left forearm at all time also the statement made by defendant Shaye O'hanneson under oath that he did not see or hear me spit all is evidence against Mr. O'hanneson that he assaulted me because he consciously made the decision to do so (copy of defendant O'hanneson rules violation report is attached to this declaration under Exhibit 2, at exhibit A).

9

(ECF No. 53, Declaration of Plaintiff.)

### F.  Defendants' Motion for Summary Judgment

Defendants contend the Court should grant their motion for summary judgment "because the undisputed facts show: (1) the amount of force Defendants used on August 28, 2009, was de minimis and caused no serious injury; (2) Taylor's excessive force claim is barred by the rule announced in Edwards v. Balisok, 520 U.S. 641 (1997) because success on this claim would necessarily invalidate the guilty finding from his earlier disciplinary hearing for assaulting staff resulting in the use of force; and (3) Defendants are entitled to qualified immunity."  (ECF No. 61, Motion, at 1-2.)

### G.  Findings on Parties' Motions for Summary Judgment

#### 1.  Plaintiff's Motion for Partial Summary Judgment Against Defendant Ohanneson

Plaintiff bears the burden of proof at trial.  To prevail on his motion for partial summary judgment against Defendant Ohanneson, Plaintiff must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  Soremekun, 509 F.3d at 984.  If Plaintiff meets his initial burden, Defendants are required to set forth specific facts showing there is a genuine issue for trial. Id.

Under Defendant Ohanneson's version of the facts, which conflict and/or contradict Plaintiff's version of the facts presented in his declaration, Plaintiff has not made a showing sufficient to establish that Defendant Ohanneson violated his constitutional right by the use of excessive force.  As such, Plaintiff has failed to carry his burden to show the absence of a genuine issue of material fact for trial.  Accordingly, Plaintiff's motion for partial summary judgment against Defendant Ohanneson should be DENIED.

#### 2.  Defendants' Cross-Motion for Summary Judgment

Defendants do not bear the burden of proof at trial.  To prevail on summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

In determining whether the force was malicious and sadistic, rather than a done in a good faith effort to maintain or restore discipline several factors are considered, including the need for application of force, the relationship between the need and amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.

    **a.**    **De Minimis Use of Force**

Defendants argue that their use of force was reasonable, necessary and minimal, and done in response to gain compliance with a lawful order. However, the Court cannot find the force used by Defendants was de minimis on the facts presented.

In support of their motion for summary judgment, Defendants Ohanneson, Duran and Smith each submit a separate declaration. Defendant Ohanneson declares, in pertinent part, as follows:

> On August 28, 2009, during the second watch, I was working as a housing unit officer in Building 8, Facility D. The second watch lasts from 6:00 a.m. until 2:00 p.m.
>
> My duties as a housing unit officer included tasks that were specifically meant to provide for the safety and the security of the housing unit and its staff and inmate occupants. These duties included, but were not limited to, ensuring safe operation of my assigned housing unit area and supervising inmate movement.
>
> On August 28, 2009 at approximately 9:00 a.m. I was releasing inmates from their cells on the upper level of the building to go to the yard. I became aware of a disturbance at the cell of an inmate who was being released by another correctional staff housing officer, R. Duran, on the lower level. I went downstairs to the cell and observed officer R. Duran and inmate Taylor.

> When I arrived at the cell, Taylor was speaking loudly and appeared to be visibly upset in a verbal altercation with officer Duran. Taylor appeared to be in a hostile and belligerent state, and he said something about wanting to see the Sergeant about his television. Officer Duran then released Taylor to go to the yard, and officer [sic] and Duran and I followed him to escort him as he left the area.
>
> While leaving the building Taylor remained in a state of escalating agitation and was argumentative. When he exited the building, I instructed Taylor to submit to handcuffs. I did to out of concern for my safety and the safety of others. As I grabbed his arm in an effort to handcuff him, Taylor turned and spit on me. I then immediately forced Taylor to the ground, using my arms and body to restraining his movements in order to handcuff him and prevent him from spitting at me again.
>
> Taylor continued to struggle and resist my attempts to position his arms and body so that I could handcuff him. During this time continued [sic] my efforts to manipulate his arms and body in order to handcuff him. Duran and other officers provided assistance in physically restraining Taylor during this time, and Taylor was told to stop fighting and resisting. Eventually Taylor was handcuffed and placed on a gurney with leg restraints and a spit mask.
>
> I issued a Rules Violation Report against Taylor for his conduct during the incident. Subsequently, he was also prosecuted on criminal charges for his conduct during this incident.
>
> In 2012, I testified in Kern County Superior Court at Taylor's trial on the criminal charges relating to his conduct during the incident. I may have also testified at a preliminary hearing in the proceedings, but do not recall with certainty. I do not recall specifically what questions I was asked or the answers I gave in testifying at the trial. I did testify truthfully and recall that substantively my testimony was consistent with the reports I had written as part of the Rules Violation Report log no. FD-09-08-053 and Crime/Incident Report log no. KVSP-FDY-09-08-0432 concerning the incident.
>
> I did not use any physical force on Taylor beyond what was necessary to restrain and handcuff him. I did not use inappropriate force against inmate Taylor, or use force against him maliciously and sadistically for the purpose of causing harm.
>
> The actions I took on August 28, 2009, were motivated by a desire to preserve the safety and security of myself and the correctional staff.

(ECF No. 61, Motion, Ex. C, Declaration of S. Ohanneson.)

Defendant R. Duran declares, in pertinent part, the following:

> On August 28, 2009, during the second watch, I was working as a housing unit officer in Building 8, Facility D. The second watch lasts from 6:00 a.m. until 2:00 p.m.

12

> My duties as a housing unit officer included tasks that were specifically meant to provide for the safety and the security of the housing unit and its staff and inmate occupants. These duties included, but were not limited to, ensuring safe operation of my assigned housing unit area and supervising inmate movement.
>
> On August 28, 2009 at approximately 9:00 a.m. I was releasing inmates from their cells in the building to go to the yard. When I encountered inmate Taylor for his release, he made some remarks about his television that I did not understand, and became argumentative. Another correctional housing officer, S. Ohanneson, had been releasing the inmates in the upper level cells directly above Taylor's cell. Officer Ohanneson came downstairs to our location. Taylor was speaking loudly, with a hostile and aggressive demeanor. He made comments about wanting to see the Sergeant about his television. I released Taylor to go to the yard, and officer Ohanneson and I followed him to escort him as he left the area.
>
> While leaving the building Taylor became louder and more belligerent. When he exited the building, Officer Ohanneson told Taylor to put his hands behind his back to be handcuffed. Taylor then spit at Ohanneson. Ohanneson forced Taylor to the ground and attempted to handcuff him. Taylor struggled and resisted Ohanneson's efforts to do so. As Ohanneson attempted to restrain plaintiff on the ground, I assisted by kneeling down and holding down plaintiff's head and shoulders so that he wouldn't spit again. This was the extent and entirety of my physical use of force on Taylor. During this time Taylor continued to struggle and resist being handcuffed, he was cursing and kicking, and he was told to stop fighting and resisting.
>
> Taylor was issued a Rules Violation Report for his conduct during this incident. Subsequently, he was also prosecuted on criminal charges for his conduct during this incident.
>
> In 2012, I testified in Kern County Superior Court at Taylor's trial on the criminal charges relating to his conduct during the incident. I do not recall specifically what questions I was asked or the answers I gave in testifying at the trial. I did testify truthfully and recall that substantively my testimony was consistent with the reports I had written as part of the Rules Violation Report log no. FD-09-08-053 and Crime/Incident Report log no. KVSP-FDY-09-08-0432 concerning the incident.
>
> I did not use any physical force on Taylor beyond what was necessary to restrain him in order that he could be handcuffed. I did not use inappropriate force against inmate Taylor, or use force against him maliciously and sadistically for the purpose of causing harm.
>
> The actions I took on August 28, 2009, were motivated by a desire to preserve the safety and security of myself and the correctional staff.

(Id., Ex. C., Declaration of R. Duran, at ¶¶ 3-10.)

Lastly, Defendant H. Smith, declares in pertinent part, as follows:

> On August 28, 2009, I was working as a housing unit officer during the second watch. The second watch lasts from 6:00 a.m. until 2:00 p.m. During the morning I observed two correctional officers escorting an inmate out of Building 8 in Facility D. As soon as they had exited the building I heard keys jingling, which was unusual and indicated a scuffle or altercation. I immediately went outside and saw inmate Taylor on the ground struggling with and resisting the officers.
>
> I assisted the officers in restraining Taylor by placing his arms behind his back and attempting to handcuff him. I did not strike Taylor with a baton, or otherwise further physically contact him. During this time Taylor continued to struggle and resist being handcuffed, and he was told to stop fighting and resisting.
>
> I did not use any physical force on Taylor beyond what was necessary to restrain and handcuff him. I did not use inappropriate force against inmate Taylor, or use force against him maliciously and sadistically for the purpose of causing harm.
>
> The actions I took on August 28, 2009, were motivated by a desire to preserve the safety and security of the correctional staff.

(Id., Ex. D, Declaration of H. Smith, at ¶¶ 3-6.)

In response and opposition to Defendants' motion for summary judgment, Plaintiff submits his own declaration, signed under penalty of perjury and based on his own personal knowledge in which he declares, in pertinent part, as follows:

> During my hearing Lieutenant Ybarra told me he was looking for a way to find me guilty on my rules violation report (115) but because of the way Ohanneson wrote the 115 up with my hands behind my back when Ohanneson took hold of my left wrist with his left hand there was no way for Ybarra to see how I could have spit on Ohanneson so Ybarra told me that the 115 says I was resisting being handcuffed and I told Ybarra that I was on the ground with Ohanneson whom weighs 260 plus pounds sitting on my lower back and Duran whom weighs 240 plus pounds sitting on my back and I only weighed 186 pounds and could not breath, Ohanneson was trying to kill me by stopping my breathing and I was trying to move in order to breath so lieutenant if you want to call that resisting then so be it and Ybarra told me he will consider that resisting and you are admitting to it so I am reducing your charge to resisting staff requiring the use of force.
>
> The defendants' declarations claim, in summary, that when Duran arrived at plaintiff['s] cell and opened the cell plaintiff was speaking loudly and appeared to be visibly upset in a verbal altercation with Duran, Taylor appeared to be in a hostile and belligerent state and said he wanted to see the Sergeant. (citations omitted.)

14

The demeanor of Taylor described by Ohanneson and Duran was a f[a]brication.  When I exited my cell Ohanneson had just [e]ntered the section on the top tier and I calmly and with clarity asked Duran to write me out a ducat so I can turn my television in and when Duran told me no I informed him that Sergeant Hightower told me to say he is giving you (Duran and Ohanneson) instructions to write me a pass it was at that time Duran became irrevent [sic] and inimical verbally to me and called Ohanneson down from the top tier.

Once Ohanneson arrived at where Duran was being verbally abusive to me I reiterated everything to him and Ohanneson started using profanity until Duran told me to get against the wall which I did.  Duran cuffed up my left wrist and grabbed the end of the handcuff, started shaking the handcuff back and forth saying out loud that I think I am bad and that he would kick my ass!

 I informed Duran that I didn't think he would kick my butt in the building where there are all of these witness[es] looking out of the door and at that time I was told to go outside which I then started to do and both Ohanneson and Duran instead of returning to release the rest of the inmates for yard they followed me out of the building.

Upon leaving the building two officers passed by me in order to help releasing the inmates to the yard.  [T]he two officers was [sic] later identified as Howard Smith and I. Sanchez, upon the officers passing by I recalled sa[y]ing that I am going directly to Sergeant Hightower to let him know I was refused a pass despite his orders to give me one.

Once I left the building Ohanneson said fucken homo, then grabbed me and threw me against the building and placed his left forearm on my neck, then radioed in that he had a combative inmate, after which Ohanneson grabbed me and threw me against the floor, jumped on top of me and kneed me three times in my back and pulled both of my arms as far as they could go back behind me.

Duran was just standing there looking.  Duran had two opportunities to first prevent Ohanneson from harming me when Ohanneson yelled out fucken homo and threw me against the building!  [D]uring the time Ohanneson radioed in that he had a combative inmate Duran could of stepped in right then, secondly when Ohanneson threw me to the ground and kneed me three times in my side, instead of jumping on my upper back Duran could have pulled Ohanneson off of me to stop him but Duran did not do that, instead he joined in the assault against me.

I was face down on my stomach on the ground arms extended back and up as far as Ohanneson could extend them with Ohanneson sitting on my butt and lower back. Duran had one knee and hand positioned on my upper back and the other hand on my face.  I weighed about 185 pounds at the time and I believed Ohanneson at the time stood at 6'3" in height and 260 plus pounds, Duran I believed stood at 6'1" in height and 280 plus pounds in weight, because of all of that it was physically impossible for me to offer any resist[a]nce to Ohanneson and Duran.

> Howard Smith has admitted that when he arrived at the incident I was already face down to the ground, hands extended directly behind me and up by Ohanneson (citation) and Duran was in control of my upper body (citation). There was no reason for Smith to join in under those conditions. I, Sanchez[,] Smith's coworker arrived at the scene at the sametime and saw what Smith saw and did not join in. (citation).

(ECF No. 66, Declaration of Taylor, at ¶¶ 4-13.)

Based on the facts before the Court, it finds the force used by Defendants, as alleged by Plaintiff, to have been beyond de minimis. Plaintiff's allegations, as set forth in his first amended complaint (detailed above under section C) and declaration, demonstrate that Defendant Ohanneson used unnecessary force without justification, Defendant Duran failed to intercede such use of force by Ohanneson, and Smith used force when none was required, resulting shoulder pain, scratches and bruises to Plaintiff (see ECF No. 61, Motion, Ex. B, Medical Report of Injury, dated 8/28/09). By Plaintiff's account because Defendant Duran failed to comply with Sergeant Hightower's order regarding the repair of his television, as relied to Duran by Plaintiff, he was threatened with physical harm by both Defendants Ohanneson and Duran. Plaintiff was followed to the yard by Defendants Ohanneson and Duran in an attempt to prevent Plaintiff from informing Sergeant Hightower of the failure to comply with his order, and the use of unnecessary force followed thereafter. As noted above, the evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

Although Plaintiff may not draw inferences without a factual foundation, he has submitted a declaration, signed under penalty of perjury and based on personal knowledge, that establishes that Defendants used force beyond that necessary in order to gain compliance with their orders, which if believed may support a basis for liability under the Eighth Amendment. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9. Such is the instance here. While *de miminis* uses of force are precluded from constitutional recognition, under the circumstances alleged by Plaintiff, there was no need for any application of force, and Defendants used force excessive in

16

1  attempting to place him in handcuffs, the Court declines to find that, as a matter of law, the force used
2  was *de minimis*. There exist genuine material facts in this case. That determination must be made by
3  the trier of fact and the Court recommends Defendants' motion for summary judgment be denied.

4　　　　Defendants Duran and Smith argue that Plaintiff cannot proceed on a claim of failure to
5  protect. Defendants are correct that Plaintiff cannot and is not proceeding on a claim of failure to
6  protect against them. However, Plaintiff's allegations and claim against Defendants Duran and Smith
7  is not "failure to protect" but rather failure to intervene/intercede. A defendant is liable for failing to
8  intervene where there is an underlying constitutional violation, as here, warranting intervention. The
9  failure to intervene is a theory of liability that derives meaning from the underlying violation (here,
10 excessive force), not a separate claim. Lynch v. Barrett, No. 09-cv-00405-JLK-MEH, 2010 WL
11 3938359, at 4-5 (D. Colo. June 9, 2010). Accordingly, the failure of the screening order to identify or
12 delineate a cognizable "failure to intervene" claim separately from Plaintiff's excessive force claim
13 does not prevent Plaintiff from seeking to impose liability from Defendants Duran and Smith for
14 failing to intervene to stop the use of force by Defendant Ohanneson. It is sufficient that the
15 allegations in the first amended complaint support a claim that Defendants Duran and Smith failure to
16 prevent Defendant Ohanneson's unconstitutional conduct.

17　　　　**b.　　Favorable Termination Rule**

18　　　　Defendants argue that Plaintiff's excessive force claims against them are barred by Heck v.
19 Humphrey, 512 U.S. 477 (1994). Under Heck, a prisoner may not proceed on a claim for damages
20 under § 1983 if a judgment favoring plaintiff "would necessarily imply the invalidity of his conviction
21 or sentence." Heck, 512 U.S. at 487; Edwards v. Balisok, 520 U.S. 641, 648 (1997) (applying *Heck* to
22 a prison disciplinary hearing where good-time credits were affected). In such a case, Plaintiff is
23 foreclosed from proceeding absent proof that the conviction or sentence has been reversed, expunged
24 or invalidated. Id. at 486-487. However, "if the district court determines that the plaintiff's action,
25 even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against
26 the plaintiff, the action should be allowed to proceed …." Id. at 487. As an illustration of the rule's
27 application, the Heck Court explained that an individual convicted of resisting arrest, defined as
28 intentionally preventing a peace officer from effecting a lawful arrest, would be barred from bringing a

damages claim for unlawful arrest. Id. at 487 n. 6. That result is compelled by the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of his conviction offense: the lawfulness of the arrest. Id.

Here, Plaintiff's excessive force claims are not barred by Heck since it is based on allegations that the force used was unreasonable in relation to the degree of resistance to arrest. The factual context in which the force was used is disputed. Thus, even though Plaintiff was found guilty of resisting officers, Defendants could, if Plaintiff's testimony is believed, nevertheless be found liable for using force "maliciously and sadistically" with the intent to cause Plaintiff harm. Under the evidence presented, a reasonable factfinder could conclude both that Plaintiff's conduct on August 28, 2009, violated § 3323, and Defendants used excessive force in response.

While Plaintiff may have been found to have resisted at some point during the altercation, if the officers used excessive force, they may still be found liable under the Eighth Amendment. The Ninth Circuit has clarified that two factual contexts can exist during one continuous transaction such that a successful § 1983 claim and a conviction for resisting arrest may coexist without running afoul of Heck. See Hooper v. County of San Diego, 629 F.3d 1127, 1132 (9th Cir. 2011) (Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.").

Accordingly, Defendants' motion for summary judgment should therefore be denied on this ground.

    **c.**    **Qualified Immunity**

Defendants maintain they are entitled to qualified immunity because they used only the most minimal force necessary to gain compliance with a lawful order.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."

1 Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important
2 interests - the need to hold public officials accountable when they exercise power irresponsibly and the
3 need to shield officials from harassment, distraction, and liability when they perform their duties
4 reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly
5 incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

6 In resolving the claim of qualified immunity, the Court must determine whether, taken in the
7 light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether
8 the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.
9 While often beneficial to address in that order, the Court has discretion to address the two-step inquiry
10 in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling
11 holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is
12 reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

13 In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a
14 constitutional violation and there exist triable issues of fact as to whether that right was violated.
15 Therefore, the Court proceeds without further discussion to the second step of the inquiry.

16 "For a constitutional right to be clearly established, its contours must be sufficiently clear that a
17 reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536
18 U.S. 730, 739 (2002). While the reasonableness inquiry may not be undertaken as a broad, general
19 proposition, neither is official action entitled to protection "unless the very action in question has
20 previously been held unlawful." Hope, 536 U. S. at 739. "Specificity only requires that the
21 unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir.
22 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates
23 established law even in novel factual circumstances," Hope, 536 U.S. at 741.

24 By 2009, inmates' rights to be free from the use of excessive physical force was clear.
25 Hudson, 503 U.S. at 6-7 (articulating the standard for excessive force claims under the Eighth
26 Amendment). The Court recognizes that the existence of material factual disputes does not necessary
27 preclude a finding of qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th
28 Cir. 2002). "Qualified immunity gives government officials breathing room to make reasonable but

mistaken judgments about open legal questions," Ashcroft v. al-Kidd, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011). Here, however, assuming the facts in the light most favorable to Plaintiff, no reasonable officer would have believed that using force without justification to subdue Plaintiff and failing to intervene during the use of such force was lawful. Accordingly, Defendants are not entitled to qualified immunity.

## IV.
## RECOMMENDATIONS

Based on the foregoing,

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to strike Plaintiff's surreply be GRANTED;
2. Defendants' motion to strike Plaintiff's statement of undisputed facts in support of his motion for partial summary judgment be DENIED; and
3. Defendants' motion for summary judgment on Plaintiff's claims of excessive force be DENIED in all respects.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 24, 2014**

UNITED STATES MAGISTRATE JUDGE